**EMERALD ISLE ELECTRIC, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 288–89 C.**

United States Court of Federal Claims.

April 5, 1993.

Robert C. Baumgarten, San Diego, CA, for plaintiff.

A. Lauren Springer Moore, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen and Thomas W. Petersen, Washington, DC, for defendant. Gayle B. Chestnut, U.S. Army Engineer Div., Pacific Ocean, of counsel.

## OPINION AND ORDER

TURNER, Judge.

Plaintiff brought this action pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988), seeking an equitable adjustment in the contract price to reimburse it for additional costs allegedly resulting from changes to the contract. The matter stands on cross-motions for summary judgment.[1] Oral argument was conducted on April 2, 1993. We conclude that summary judgment should be granted in favor of defendant.

### I

On September 30, 1986, the parties entered a contract in which plaintiff agreed to renovate the electrical wiring in government-owned housing located at McGrew Point, Pearl Harbor, Oahu, Hawaii for the sum of $462,375. At a pre-construction conference, the defendant instructed plaintiff that it would be permitted to work from 0730 to 1600 HST, Monday through Friday, and that it would be responsible for protecting all of the personal belongings within the units.[2] These instructions are the basis for this action. Although plaintiff disagreed with defendant's interpretation of the contract, plaintiff nevertheless performed the contract to the satisfaction of defendant. Plaintiff informed defendant that it considered the limitation on work hours and the presence of personal belongings in the residences to be a change in the contract. Then, plaintiff submitted a claim to the contracting officer for an equitable adjustment in the amount of $396,264 for additional costs incurred moving personal belongings and complying with the limitation on work hours.

### II

This case involves an issue of contract interpretation. Plaintiff contends that the contract is ambiguous and that the doctrine of *contra proferentem* should be applied. Defendant disagrees, arguing that even if the contract is ambiguous, the ambiguities are patent so that plaintiff was responsible for seeking clarification of the contract before bidding.

 Generally, if a contract contains ambiguities, the ambiguities are resolved, if possible, by using one of two risk allocation principles. The first is that the risk of ambiguity is allocated to the party responsible for drafting the document when the ambiguity is latent. This is the doctrine of

---

1. Plaintiff filed a motion for summary judgment on October 1, 1992. Defendant filed a cross-motion for summary judgment on December 1, 1992.

2. The parties disagree as to whether plaintiff requested clarification of the contract at this conference.

*contra proferentem.* The rationale for *contra proferentem* is to put

> the risk of ambiguity, lack of clarity, and absence of proper warning on the drafting party which could have forestalled the controversy; it pushes the drafters toward improving contractual forms; and it saves contractors from hidden traps not of their own making.

*Sturm v. United States,* 190 Ct.Cl. 691, 697, 421 F.2d 723, 727 (1970).

The second principle is sometimes considered an exception to the doctrine of *contra proferentem.* If the non-drafting party fails to seek clarification of a patent ambiguity before bidding, then the non-drafting party bears the risk of misinterpretation. A patent ambiguity is generally defined as an "obvious omission, inconsistency or discrepancy of significance." *Beacon Constr. Co. of Massachusetts v. United States,* 161 Ct.Cl. 1, 314 F.2d 501, 504 (1963). The rationale for this rule was articulated by the Court of Claims in *S.O.G. of Arkansas v. United States,* 212 Ct.Cl. 125, 131, 546 F.2d 367, 370–71 (1976):

> The rule that a contractor, before bidding, should attempt to have the Government resolve a patent ambiguity in the contract's terms is a major device of preventive hygiene; it is designed to avoid just such post-award disputes as this by encouraging contractors to seek clarification before anyone is legally bound.... In addition to its role in obviating unnecessary disputes, the patent-ambiguity principle advances the goal of informed bidding and works toward putting all the bidders on an equal plane of understanding so that the bids are more likely to be truly comparable. Conversely, the principle also tends to deter a bidder, who knows (or should know) of a serious problem in interpretation, from consciously taking the award with a lower bid (based on the less costly reading) with the expectation that he will then be able to cry "change" or "extra" if the procuring officials take the other view after the contract is made.

The parties agree that these risk allocation principles should be applied in this case. We address each of the alleged ambiguities seriatim.

## A

The first issue is whether defendant changed the work hours established in the contract. Plaintiff maintains that the work hours were 1730 to 1600 HST, Monday through Friday, and that the government changed the contract when it curtailed plaintiff's hours to 0730 to 1600 HST. Specification 10.d, which sets forth the permissible work hours, states:

> All required construction of a particular dwelling unit shall be completed within 5 calendar days after buildings are made available to the Contractor. *All work shall be performed between the hours of 1730 to 1600 HST, Monday through Friday.* No work shall be accomplished on Saturday, Sunday or Holidays, or during the period between 20 December and 4 January, without written permission from the Contracting Officer.

(Emphasis added).

Plaintiff contends that when bidding on the project, it interpreted specification 10.d to mean that it could begin work on a unit at 17:30 (5:30 p.m.), that it would work until 16:00 (4 p.m.) the following day, and that it would stop work for one and one-half hours to permit tenants access to their belongings.

Defendant contends that "1730" was a typographical error, and should have been "0730," and that the error was obvious (and thus plaintiff should bear the burden of the additional costs) because specification 10.d was plainly inconsistent with specification 11.a(2) of the contract. Specification 11.a(2) of the solicitation requires that *"[t]he work area shall be maintained free of debris at the end of each working day. Debris shall not be stored at the job site overnight."* (Emphasis added).

The first sentence of 11.a(2) is inconsistent with 10.d, according to defendant, because it would have been unduly burdensome and somewhat absurd to require plaintiff to clear the job site for one and

one-half hours each day while otherwise permitting work virtually around the clock.

The second sentence of 11.a(2) is inconsistent with 10.d, according to defendant, because it would have been unreasonable to require plaintiff to keep the worksite clear of debris during the night if plaintiff was permitted to work during the night.

Thus, defendant contends that a reading of specifications 11.a(2) and 10.d should have put plaintiff on notice of the obvious mistake and cast on plaintiff the burden to seek clarification of the work hours before bidding on the contract.

Plaintiff contends that its interpretation is reasonable, considering the five-day turnaround for completion of the units. Plaintiff has not attempted to demonstrate that five days, from 7:30 to 4:00, was atypical for a project such as this one.

We conclude that specification 10.d plainly contained a typographical error of which plaintiff should have been aware. Further, if specification 10.d alone was not enough to alert plaintiff of the error, the obvious inconsistency between specification 11.a(2) and 10.d should have put plaintiff on notice to seek clarification of the contract before bidding.

## B

■ The second issue is whether the contract required plaintiff to move small personal items as necessary to accomplish the work. Specification 10.e provides that "[t]he Contractor shall move all appliances and major furnishings as necessary for accomplishing the work." Specification 11.a(1) provides:

> The Contractor shall be responsible for protecting household furnishings (such as furniture, carpets, curtains, drapes, *and other personal property*) from any damage soiling by the performance of this contract. Use of drop cloths and furniture covers is considered to be the minimum precaution reasonable to accomplish the protection required by this responsibility.

(Emphasis added).

It is clear that the contract places complete responsibility on the plaintiff to pro-

tect, in whatever way is necessary, all items present in the units. Plaintiff objects, however, to the mere presence of "small personal effects" in the units.

Plaintiff, pointing to specification 10.a, contends that units were not "unoccupied" as required by the contract. Specification 10.a provides: "Dwelling units to be renovated under this contract will be unoccupied during the time of construction." Defendant maintains that the term "unoccupied" as used in the contract meant that the units would be vacated by the tenants during the day but would contain any personal property the tenants chose to leave in the units. Defendant points out that the units contained personal belongings during a site inspection.

We conclude that specifications 10.e and 11.a(1) obviously contemplated that the tenants would not be required to remove any of their belongings to accommodate the work performed by plaintiff. In the face of these provisions that referred to furnishings, appliances, personal property and other items, we find it implausible that plaintiff would interpret specification 10.a (stating that the units would be unoccupied) to mean anything other than that the tenants would be absent during the day. Accordingly, we conclude that the plaintiff should at least have been on notice to seek clarification of the alleged ambiguity prior to bidding on the project.

## III

Based on the foregoing, defendant's cross-motion for summary judgment is GRANTED, and plaintiff's motion is DENIED. Accordingly, judgment shall be entered in favor of defendant.

Pursuant to RCFC 54(d), costs shall be allowed to the defendant ("the prevailing party").